## RECORD NO. 22-1406

In The

# United States Court of Appeals

### For The Fourth Circuit

### TERESA D. NIXON,

*Plaintiff – Appellant,*

**v.**

### KYSELA PERE ET FILS, LTD.;
### FRANCIS J. KYSELA, V,

*Defendants – Appellees.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### AT HARRISONBURG

_____

### REPLY BRIEF OF APPELLANT

_____

John C. Cook
Philip C. Krone
COOK CRAIG & FRANCUZENKO, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, Virginia 22030
(703) 865-7480

*Counsel for Appellant*

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION .................................................................................1

ARGUMENT ......................................................................................3

     I.     THE DISTRICT COURT ERRED IN FINDING NIXON
           COULD NOT HAVE BEEN TERMINATED "BECAUSE OF
           SEX" BOTH BECAUSE THERE WAS EVIDENCE THAT
           SHE WAS TERMINATED AFTER THE END OF THE
           RELATIONSHIP AND BECAUSE THE LAW WOULD
           PROPERLY HOLD THAT THE TERMINATION OF
           EMPLOYMENT BECAUSE OF THE END OF A SEXUAL
           RELATIONSHIP IS A TERMINATION "BECAUSE OF SEX"
           IN VIOLATION OF TITLE VII ...........................................................3

           A.     There Was Sufficient Evidence for a Jury to Conclude
                  That Nixon Rejected Three Sexual Advances From
                  Kysela, Resulting in Her Termination .......................................5

                  1.     Kysela made an unwelcome sexual advance in
                        August 2019 ....................................................................5

                  2.     There was an unwelcome sexual advance on
                        September 24, 2019 ........................................................7

                  3.     There were continued advances in the September
                        24-25 communications .....................................................8

                    B.     The Court Should Clearly Find that a Jury May Determine
                    that a Termination Because of the Ending of a Sexual
                    Relationship is a Termination "Because of Sex" in
                    Violation of Title VII ..............................................................10

i

II.   THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT ON NIXON'S BREACH OF CONTRACT CLAIM BECAUSE THERE ARE QUESTIONS OF FACT AS TO WHETHER NIXON'S TERMINATION BREACHED THE EMPLOYMENT AGREEMENT .......................................................18

III.  THE DISTRICT COURT ERRED IN DISMISSING NIXON'S HOSTILE WORK ENVIRONMENT CLAIM BY FAILING TO GIVE PROPER CONSIDERATION TO EVIDENCE NIXON FEARED LOSING HER JOB IF SHE REFUSED KYSELA'S ADVANCES .......................................................................20

CONCLUSION .......................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.*,
    269 Va. 315 (2005) .........................................................................................19

*Briggs v. Waters*,
    484 F. Supp. 2d 466 (E.D. Va. 2007) ..............................................................10

*Burlington Industries, Inc. v. Ellerth*,
    524 U.S. 742 (1998).............................................................................3, 10, 20

*Campbell v. Masten*,
    955 F. Supp. 526 (D. Md. 1997).........................................................14, 15, 16

*Conklin v. Suffolk*,
    859 F. Supp. 2d 415 (E.D.N.Y. 2012) ..............................................................15

*EEOC v. Appalachian Power Co.*,
    Case No. 1:18CV00035,
    2019 WL 4644549 (W.D. Va. Sept. 24, 2019)...............................................14

*Ford v. Simms*,
    23 F. App'x 152 (4th Cir. 2001) (unpublished) ................................................3

*Forrest v. Brinker Intern. Payroll Co., LP*,
    511 F.3d 225 (1st Cir. 2007)....................................................................12, 17

*Glover v. Oppleman*,
    178 F. Supp. 2d 622 (W.D. Va. 2001)...............................................................6

*Howerton v. Bd. of Educ. of Prince George's Cty.*,
    No. CIV.A. TDC-14-0242,
    2015 WL 4994536 (D. Md. Aug. 19, 2015)...................................................20

*Keppler v. Hinsdale Tp. High Sch. Dist. 86*,
    715 F. Supp. 862 (N.D. Ill. 1989)....................................................................15

iii

*Lipphart v. Durango Steakhouse of Brandon, Inc.*,
  267 F.3d 1183 (11th Cir. 2001) ................................................................18

*Moberly v. Midcontinent Commc'n*,
  711 F. Supp. 2d 1028 (D.S.D. 2010) ........................................................17

*Moron v. Va. Polytechnic Inst. & State Univ.*,
  508 F. App'x 226 (4th Cir. 2013) ..............................................................20

*Moser v. MCC Outdoor, L.L.C.*,
  256 F. App'x 634 (4th Cir. 2007) ..........................................................3, 10

*Novak v. Waterfront Comm. of New York Harbor*,
  928 F. Supp. 2d 723 (S.D.N.Y. 2013) ......................................................15

*Okoli v. City of Balt.*,
  648 F.3d 216 (4th Cir. 2011) ....................................................................14

*Pergine v. Penmark Mgmt Co., Inc.*,
  314 F. Supp. 2d 486 (E.D. Pa. 2004) ........................................................13

*Perks v. Town of Huntington*,
  251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ....................................................13

*Pipkins v. City of Temple Terrace*,
  267 F. Supp. 1197 (11th Cir. 2001) ..........................................................17

*Schrader v. E. G. & G.*,
  953 F. Supp. 1160 (D. Colo. 1997) ...........................................................13

*Scott v. Harris*,
  550 U.S. 372 (2007) ....................................................................................6

*Stepheny v. Brooklyn Hebrew Sch. for Special Children*,
  356 F. Supp. 2d 248 (E.D.N.Y. 2005) ......................................................15

*Thomas v. Sw. Virginia Transit Mgmt. Co., Inc.*,
  No. 7:19-CV-00652,
  2020 WL 3237977 (W.D. Va. June 15, 2020) ...........................................14

*United States v. Diebold, Inc.*,
    369 U.S. 654 (1962)........................................................................6

*West v. MCI Worldcom, Inc.*,
    205 F. Supp. 2d 531 (E.D. Va. 2002) ..........................................16

*Williams v. Herron*,
    687 F. 3d 971 (8th Cir. 2012) ....................................................3, 4

*Xiaoyan Tang v. Citizens Bank, N.A.*,
    821 F.3d 206 (1st Cir. 2016).......................................................17

## **STATUTE**

Title VII of the Civil Rights Act of 1964...........................................*passim*

## **REGULATION**

29 C.F.R. § 1604.11(a)..............................................................11

## **INTRODUCTION**

This reply brief is intended solely to respond to the Appellees' contentions that require further discussion for proper determination of the issues raised on appeal. This brief does not respond to issues that Appellant believes were adequately discussed in the opening brief, and Appellant intends no waiver of these issues by not expressly reiterating them herein.

The issues presented in this appeal are that the District Court erred (1) in holding that no reasonable jury could find that Kysela had made unwelcomed sexual advances toward Nixon, the refusal of which resulted in her termination, (2) in applying case law in which courts found that employment terminations after the ending of sexual relationships were not "because of sex," because in those cases intervening factors were the actual cause of the termination of employment, and the court below concluded effectively that no job termination after the termination of a sexual relationship could be "because of sex;" (3) in granting summary judgment on the breach of contract claim, because if the termination was "because of sex," then it did not meet any of the contractual criteria for termination; and (4) in dismissing the hostile work environment claim.

Essentially, the Opposition argues that the facts were properly determined below. The Opposition does not address Appellant's contention that the District Court did not give Nixon all of the inferences presented by the evidence, or that the

District Court made improper credibility determinations on motion. The Opposition further argues that the law prohibits a finding of *quid pro quo* harassment if a person in a sexual relationship is terminated for refusing a sexual advance. The Opposition further ignores record evidence that, in the instant case, there was sufficient evidence to prove the parties were not in a sexual relationship when Kysela made three different sexual advances. The Opposition suggests that Appellant is seeking to overturn precedent, which is absolutely incorrect.

The reasonable inferences drawn from the evidence in the instant case, in the light most favorable to Nixon, show that the terms and conditions of Nixon's employment with KPF were intertwined and dependent on her sexual relationship with Kysela. A jury could conclude that when the two rekindled their relationship in August 2019, it was the result of Kysela making a sexual advance. A jury could conclude the sexual relationship between the two ended in early September 2019, after which Kysela made sexual advances which were rebuffed, resulting in Nixon's termination. A jury could also find that Nixon ended the sexual relationship between the two later in September, after which she was terminated immediately. The District Court's decision granting summary judgment must be reversed because it improperly made factual determinations, improperly weighed the evidence, and erroneously applied Title VII law as it relates to post-consensual relationship *quid pro quo* discrimination.

## **ARGUMENT**

I.  **THE DISTRICT COURT ERRED IN FINDING NIXON COULD NOT HAVE BEEN TERMINATED "BECAUSE OF SEX" BOTH BECAUSE THERE WAS EVIDENCE THAT SHE WAS TERMINATED AFTER THE END OF THE RELATIONSHIP AND BECAUSE THE LAW WOULD PROPERLY HOLD THAT THE TERMINATION OF EMPLOYMENT BECAUSE OF THE END OF A SEXUAL RELATIONSHIP IS A TERMINATION "BECAUSE OF SEX" IN VIOLATION OF TITLE VII.**

It is clearly established that an employee's termination because of her refusal to submit to a supervisor's demand for sex results in a tangible employment action. *Ford v. Simms*, 23 F. App'x 152, 154 (4th Cir. 2001) (unpublished) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760 (1998). The basic foundation of a *quid pro quo* case is "[w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." *Ellerth*, 524 U.S. at 753-54 (1998). The instant Opposition Brief agrees, citing this Court, that "[i]n essence, a plaintiff must prove that a 'tangible employment action resulted from a refusal to submit to a supervisor's sexual demands.'" (Appellee's Resp. Br.; Dkt. No. 28, p. 34) (citing *Moser v. MCC Outdoor, L.L.C.*, 256 F. App'x 634, 642 (4th Cir. 2007) (citations omitted)).

Sexual advances resulting in termination after the end of a previously consensual relationship have been held as actionable. *See Williams v. Herron*, 687

3

F. 3d 971 (8th Cir. 2012). In *Williams*, the defendant, a chief deputy sheriff, hired the plaintiff as a corrections officer. *Id.* at 973. After the plaintiff was hired, she and the defendant began a consensual relationship. *Id.* However, the relationship soured, and the plaintiff wanted to end things, but she was afraid that she would lose her job if she did. *Id.* The relationship finally ended, but the defendant continued to make unwelcome advances towards the plaintiff. *Id.* The Eighth Circuit found that the defendant was not entitled to qualified immunity based on his harassment of the plaintiff.[1] *Id.* Despite their previously consensual relationship, the Eighth Circuit found that the plaintiff had presented sufficient evidence to show the defendant's conduct after the end of their relationship was unwelcome by showing that he had grabbed and hugged her while she attempted to clock out, he made pouty faces at her after she ended their relationship, and other sexual advances. *Id.* at 975. The Court also found that the conduct was severe enough to alter the terms, conditions, or privileges of the plaintiff's employment. *Id.* at 977.

---

[1] The Eighth Circuit decision addressed whether the defendant was entitled to qualified immunity for a Section 1983 claim; however, the court noted "[w]e have previously held that section 1983 sexual-harassment claims are treated the same as sexual-harassment claims under Title VII of the Civil Rights Act of 1964." *Williams*, 687 F.3d at 978.

**A.** **There Was Sufficient Evidence for a Jury to Conclude That Nixon Rejected Three Sexual Advances From Kysela, Resulting in Her Termination.**

There was sufficient evidence in the record by which a jury could conclude that Nixon refused a sexual advance from Kysela when she restarted employment with KPF in August 2019, that she refused a sexual advance from Kysela as the parties emailed each other on September 24, and that she refused a sexual advance during the continued communication between the parties on September 24-25, 2019, and that these refusals, or any one of them, caused her termination.

**1.** **Kysela made an unwelcome sexual advance in August 2019.**

In July of 2019, Nixon unequivocally expressed to Kysela that their relationship was over, and wrote to Kysela, "I won't entertain seeing you on a personal level ever again. Best for both of us." (JA963). However, at the time Kysela wanted to bring Nixon back to KPF, he wanted both the employment relationship and sexual relationship to start again. (JA700-01, JA836, JA1069). Kysela admitted that, regarding the job and sex, "[i]t was all one thing." (JA700-01).[2] In the end, the two rekindled their sexual relationship. Given the history between the parties, a reasonable jury could conclude that Nixon wanted a professional relationship only,

---

[2] The Opposition argues that this statement was taken out of context; however, this quote shows, in any context, that Kysela understood that Nixon's return to work would involve sex, despite Nixon's clear communications otherwise. Moreover, if additional context is warranted, that context should be presented to the jury, not the district court, for resolution.

but Kysela wanted both a professional and sexual relationship. A jury could conclude Kysela prevailed, as Nixon gave in to sex to resume and retain employment with KPF.

The Opposition relies on *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) (Dkt. No. 28, p. 29) to argue that the facts surrounding the August sexual advance are too speculative. However, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

The District Court failed to draw reasonable inferences in a light most favorable to Nixon as it relates to events in July and August of 2019. One reasonable inference from these facts – Nixon saying no more sex and Kysela viewing the job and sex as one thing – is that Kysela initiated the relationship. Thus, he made an advance despite Nixon preemptively saying no. That amounts to an unwanted advance. The District Court, however, drew this inference against Nixon, and determined that Kysela did not make an advance and concluded it was simply during an "on" time of their on-again off-again relationship. (JA1222). In so doing, the District Court did not draw all reasonable inferences in favor of the non-moving party. Accordingly, KPF was not entitled to summary judgment on this point and the District Court's decision granting summary judgment must be reversed.

### 2. There was an unwelcome sexual advance on September 24, 2019.

Kysela testified that the sexual relationship between the two ended in early September. (JA722-23). Despite the fact that the relationship was over, according to his testimony, Kysela contacted Nixon on September 24, as he was returning from Europe, and asked to see her on Sunday night upon his return. Nixon demurred and suggested a phone call or a meeting on Monday. Kysela persisted in asking to visit Nixon on Sunday night. (JA1075, JA1105-06). Even the District Court concluded that "a fair reading of the email" was that Kysela was making a sexual advance in asking to see Nixon on Sunday night. (JA1223). The District Court, however, stated that the advance could not be unwelcome because Nixon had not terminated the sexual relationship by that time. (JA1223). The problem with that finding is that it was in conflict with Kysela's testimony that *both* parties had ended the relationship earlier in September. (JA722-23). The Court made a credibility determination in opting to disregard Kysela's testimony that the parties had ended the sexual relationship earlier, in favor of noting the *absence* of testimony from Nixon that she had ended the relationship. (JA1223-24). Only the jury can properly make the factual determination of the date the relationship ended. If the jury were to conclude that the relationship ended in early September, or that Kysela believed the relationship had ended, then it could reasonably conclude that Kysela's sexual advance on September 24 was unwelcome.

7

The Opposition further argues that there was evidence to support the position that the two were still in a relationship on September 24, 2019 because they were saying "I love you." (Dkt. No. 28, p. 43). Concluding that someone saying "I love you" equates to the existence of a continued sexual relationship was a job for the jury. People say "I love you" in all sorts of situations and in many different relationships that do not involve sex. It would also not be unheard of for parties who had recently ended a sexual relationship to say "I love you" and to mean it, without meaning that they wanted to have sex. Love is an emotion much broader than just sex and the two are not synonymous.

Accordingly, the District Court's granting of summary judgment for the defendants must be reversed.

### 3.    There were continued advances in the September 24-25 communications.

If a jury were to conclude that the sexual relationship did not end in early September, it could conclude that the relationship ended during the September 24-25 communications, and that Kysela's further comments in those emails were unwelcome sexual advances. The District Court seemed to conclude that the relationship ended during these exchanges. In oral argument, the Court commented, "I think that is probably the most logical way to view these exchanges. I guess the issue, though, is when she said no, that is the first time. You know, she's laying

down her marker, no we are essentially broken up. We're no longer in a relationship.

I don't want to have sex with you." (JA1184).

> The District Court then acknowledged

> > that, even after Nixon expressed to Kysela that their relationship was 'over and done' during this e-mail exchange, Kysela made two other comments, but neither of these amounts to an "unwelcome sexual advance" for purposes of a Title VII quid pro quo claim. First, Kysela responded, 'You're the problem child. **Behave and we will be fine**.' [(JA11030]. Nixon replied, 'Stop being so mean. I don't have a problem with you at all. I just don't want to be involved personally. It's not a healthy situation.' (*Id.*) And Kysela wrote, "Teresa, You have many issues. I have tried to help you over the years. **Relax here**. **We will be fine**." (*Id.*) While Kysela's remarks express his belief that the relationship was still salvageable, they do not amount to "conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or uninvited and is undesirable or offensive . . . ." *Rodriguez*, 250 F. Supp. 2d at 699.

(JA1223) (emphasis added).

The problem with the District Court's analysis at that point, however, is that it ignores the context of the parties' prior relationship. It simply says that these comments do not amount to "comments of a sexual nature." (JA1223). The Opposition similarly tries to isolate these comments to say they do not represent an invitation to sex. But previously, Kysela had insisted that Nixon abide by certain terms and conditions, including that Nixon be 'loyal' and 'submissive' sexually. (JA1074, JA1110, JA1205). In that context, Kysela's comments allow for a reasonable jury to find that Kysela was attempting to assert his dominance to persuade Nixon to have sex. The District Court did not allow for such an inference.

Accordingly, KPF was not entitled to summary judgment and the District Court's granting of summary judgment must be reversed.

**B.** **The Court Should Clearly Find that a Jury May Determine that a Termination Because of the Ending of a Sexual Relationship is a Termination "Because of Sex" in Violation of Title VII.**

It is uncontested that being terminated for refusing a sexual advance is a violation of well-established Title VII law, regardless of whether there was a consensual relationship. Even the Appellee admits that to make out a *quid pro quo* claim, "[i]n essence, a plaintiff must prove that a 'tangible employment action resulted from a refusal to submit to a supervisor's sexual demands.'" (Dkt. No. 28, p. 34) (citing *Moser*, 256 F. App'x at 642 (citations omitted)). "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." *Ellerth*, 524 U.S. at 753-54. Further, *quid pro quo* sexual harassment also applies to situations where submission is not explicitly a condition of continued employment, but "the rejection of such advances is nevertheless the motivation underlying an employer's decision to take an adverse employment action against an employee." *Briggs v. Waters*, 484 F. Supp. 2d 466, 477 (E.D. Va. 2007) (internal citations omitted). "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual

harassment" and are in violation of Title VII **on the basis of sex** "when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual." 29 C.F.R. § 1604.11(a) (emphasis added).

Ultimately, the prior section's detailed analysis of the September 24-25 email string and the analysis of conflicting deposition testimony on when the sexual relationship ended is only necessary because a basic legal question remains unanswered in this Circuit – can the termination of employment because of the ending of a sexual relationship be a termination "because of sex" in violation of Title VII. The District Court reached the tentative conclusion that Nixon was terminated for ending her sexual relationship with Kysela. (In a footnote the court stated, "the court is *extremely* skeptical that Nixon's firing was not based, at least in part, on the termination of her relationship with Kysela.") (JA1227). But then the court concluded that the termination was "based on [Kysela's] personal feelings about the ending of their long-term consensual relationship, not Nixon's sex." *Id.* That is a distinction without a difference. Terminating someone because they ended the relationship is the same thing as terminating them because of how you feel about the ending of the relationship. Likewise, the court further suggested that the claim would fail "in the absence of an unwelcome sexual advances." *Id.* Yet again, the court

11

unnecessarily required the threading of a needle. Terminating employment because someone says, "I won't have sex with you again" is no different conceptually from terminating employment because someone says, "I won't have sex with you." The "again" part should not be dispositive. The Opposition incorrectly asserts that question has been answered and incorrectly asserts Appellant is calling for a reversal of precedent. Quite the contrary. The question has not been answered squarely and to remove doubt it should be.

The First Circuit has already addressed this question in a hostile work environment context. In *Forrest v. Brinker Intern. Payroll Co., LP*, 511 F.3d 225, 229 (1st Cir. 2007), the plaintiff began to date her coworker while she was employed at Chili's. *Id.* at 227. The two later ended their relationship and the coworker began to call the plaintiff names and harass her at work. *Id.* The plaintiff reported this behavior to her supervisors, the coworker was reprimanded several times, and he was eventually fired. *Id.* While the magistrate judge found that the harassment was based on the harasser's personal animosity from their failed relationship and not based on the plaintiff's sex, the First Circuit disagreed. *Id.* at 229. The First Circuit, addressing the argument that the plaintiff's termination was based on a relationship gone sour, called the argument "a false dichotomy." *Id.* at 229. The court further stated, "[p]resumably the prior relationship would never have occurred if the victim were not a member of the sex preferred by the harasser, and thus the victim's sex is

12

inextricably linked to the harasser's decision to harass." *Id.* The court reasoned that improper gender bias can be inferred from conduct, and if the harassing conduct is gender-based, it does not matter that the parties had a prior consensual relationship. *Id.*[3]

Several other District Courts have come to similar conclusions. *See Pergine v. Penmark Mgmt Co., Inc.*, 314 F. Supp. 2d 486, 492 (E.D. Pa. 2004) ("A relationship that is consensual at its inception does not necessarily preclude a quid pro quo claim by an employee, if the employee later attempts to break off the relationship, and suffers an adverse employment action as a result."); *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1157 (E.D.N.Y. 2003) (Reasoning that allowing "once a supervisor has engaged in a consensual relationship with an employee, he subsequently has carte blanche to harass that employee with impunity, even though the same behavior with respect to any other employee would constitute a Title VII violation" makes "little sense."); *Schrader v. E. G. & G.*, 953 F. Supp. 1160, 1168 (D. Colo. 1997) (Finding "prior consensual relationship with [harasser] does not change the analysis under Title VII.").

_____

[3] While the Court overturned the finding that the alleged hostile work environment in the case was not "based on sex," it did uphold the granting of summary judgment on other grounds, namely that the employer had handled the plaintiff's complaints correctly.

The essential elements[4] of a *quid pro quo* harassment claim are present in the instant case. Nixon was terminated either a few weeks after the relationship ended, or a few days after, or in the same conversation when the relationship ended, depending on whether the factfinder determines the sexual relationship ended in early September, on September 24-25, or during the September 29 telephone call. Each of these scenarios presented a sexual advance that Nixon rejected by ending the relationship. (*See* supra, Section I(A)) (JA452-53, JA718-22, JA722-23, JA726-27, JA1075).

The cases cited in the Opposition misapply the flawed view that consensual relationships preclude an unwanted advance from the "because of sex" standard. *See* (Dkt. No. 28, p. 34) (citing *Campbell v. Masten*, 955 F. Supp. 526, 529 (D. Md. 1997)). The Opposition cites a 25-year-old case from the District of Maryland for the proposition that there can be "no basis to infer that the sexual advances were unwelcome where the plaintiff had conceded that the relationship was consensual."

---

[4] To make a prima facie case for *quid pro quo* harassment, "a plaintiff must establish: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; and (5) the employer knew or should have known of the harassment and took no effective remedial action." *Thomas v. Sw. Virginia Transit Mgmt. Co., Inc.*, No. 7:19-CV-00652, 2020 WL 3237977, at *5 (W.D. Va. June 15, 2020) (citing *EEOC v. Appalachian Power Co.*, Case No. 1:18CV00035, 2019 WL 4644549, at *6 (W.D. Va. Sept. 24, 2019) (citing *Okoli v. City of Balt.*, 648 F.3d 216, 222 (4th Cir. 2011)).

(Dkt. No. 28, p. 34) (citing *Campbell v. Masten*, 955 F. Supp. 526, 529 (D. Md. 1997)).[5] *Campbell* is easily distinguishable from the present case.[6] In *Campbell*, the plaintiff entered into a consensual, sexual relationship with a coworker who allegedly had some supervisory authority over her. *Campbell*, 955 F. Supp. at 527. The coworker later broke off his relationship with the plaintiff and became engaged to another woman. *Id.* at 528. The plaintiff alleged that, after the end of their relationship, the coworker became critical of her work and that he worked to have her terminated from her job so that his new wife would not find out about their prior relationship. *Id.* The coworker did not pursue any type of sexual relationship with the plaintiff after he ended their relationship. *Id.* The District Court found that the plaintiff had not made any allegations that the sexual relationship was unwelcome

---

[5] It is certainly possible to be in a sexual relationship and not consent to sex at any given time.

[6] The opposition cites to several other cases for their proposition that a prior consensual relationship should prohibit a finding of discrimination; however, those cases are all distinguishable from the present case. *See Novak v. Waterfront Comm. of New York Harbor*, 928 F. Supp. 2d 723 (S.D.N.Y. 2013) (alleged harasser treated his former lover harshly after their consensual relationship ended; however, alleged harasser never sought sexual favors after the breakup.); *Conklin v. Suffolk*, 859 F. Supp. 2d 415 (E.D.N.Y. 2012) (alleged harasser made comments about wanting to resume their relationship, but never made any sexual advances towards the plaintiff after the end of their relationship.); *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248 (E.D.N.Y. 2005) (alleged harasser exhibited hostile behavior towards former lover and his wife after the end of their relationship, but did not make any sexual advances towards the former lover after the relationship's end.); *Keppler v. Hinsdale Tp. High Sch. Dist. 86*, 715 F. Supp. 862, 869 (N.D. Ill. 1989) (former lover harassed the plaintiff after the end of their relationship, but was not the plaintiff's supervisor with the power to hire or fire her.).

and that the coworker was the party to end the relationship such that "if there was a jilted lover amongst this pair, it was [the plaintiff] not [the coworker]." *Id.* at 529.

In the present case, Nixon clearly expressed her intention to end her relationship with Kysela (JA459, 963). Despite Nixon ending their relationship, Kysela continued to pursue Nixon through unwelcome sexual advances. The facts of *Campbell* and the facts of the present case are clearly distinct. *Campbell* offers no support to the suggestion that a consensual relationship prequalifies an advance as welcome.

The Opposition further relies on the holdings in *West v. MCI Worldcom, Inc.*, 205 F. Supp. 2d 531 (E.D. Va. 2002), and suggests that Nixon is asking the Court to overturn precedent and rewrite existing law. That is simply not the case. In *West*, the sexual relationship between the parties ended in July and the plaintiff started a new relationship with someone else. Her boss and former lover terminated her on September 1 due to his jealousy over her new relationship. *Id.* at 545. The case does *not* stand for the proposition that the termination of a sexual relationship, leading to an employment termination, cannot be a violation of Title VII. Instead, the case is simply a fact-based situation where an intervening factor – jealousy over a new relationship – was determined to be the reason for termination. Ultimately, there is no bright-line rule that a victim of sexual harassment is always prevented from bringing a Title VII claim if the victim and the harasser had previously engaged in a

consensual relationship. *See Pipkins v. City of Temple Terrace*, 267 F. Supp. 1197, 1201 (11th Cir. 2001) (stating, "this court does not today decide that once a consensual relationship between a supervisor and a subordinate is established, the subordinate could never then become victim to *quid pro quo* sexual harassment by that supervisor subsequent to the termination of the relationship."). Rather, "sexual behavior directed at a woman raises the inference that the harassment is based on her sex." *Moberly v. Midcontinent Commc'n*, 711 F. Supp. 2d 1028, 1039 (D.S.D. 2010).

The instant case presents the opportunity for this Circuit to clarify, not overturn, the law in this area. The termination in this case was because of Nixon's sex. The long and tumultuous relationship between Nixon and Kysela, Nixon's refusal to submit to sexual demands, and Nixon's termination, would not have occurred but for Nixon's sex and Kysela's preference for her sex. Therefore, Nixon's sex is "inextricably linked" to the beginning of the relationship and Kysela's actions after the relationship's end. Ultimately, the parties' prior relationship is only one factor to consider, as "improper gender bias can be inferred from conduct; if the harassing conduct is gender-based, Title VII's requirement that the harassment be "based upon sex" is satisfied." *Forrest*, 511 F.3d at 229; *see also Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206 (1st Cir. 2016) (stating "when harassment is motivated by a failed attempt to establish a romantic relationship, 'the victim's sex

is inextricably linked to the harasser's decision to harass.'"); *Lipphart v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183 (11th Cir. 2001) ("while a prior intimate relationship is an important factor to consider, it is not determinative of a sexual harassment claim.").

The District Court engaged in a linguistic dance to avoid holding what ought to be clear law. If an employee terminates a sexual relationship with her supervisor, and the supervisor fires her because of that, the termination is "because of sex" in violation of Title VII. The Circuit should correct that error.

## II.   THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT ON NIXON'S BREACH OF CONTRACT CLAIM BECAUSE THERE ARE QUESTIONS OF FACT AS TO WHETHER NIXON'S TERMINATION BREACHED THE EMPLOYMENT AGREEMENT.

The Opposition's basis for the argument that there was no breach of contract is dependent on the finding that Nixon was not unlawfully terminated. As set forth in the Opening Brief, the existence of a dispute as to whether Nixon was unlawfully terminated prohibits a determination as a matter of law that there was no breach of contract. Essentially, the Opposition argues this is a contract that gives discretion, so it does not matter if civil rights are violated. The contract clearly says otherwise.

The Employment Agreement at issue provided for four possible ways to terminate Nixon's employment:

(1)    Conduct by Nixon involving substance or alcohol abuse or dependency, disloyalty, or other conduct in contravention of Kysela's financial and business interest;

(2)    Nixon's failure to meet monthly sales goals;

(3)    Nixon's breach of the terms of the employment agreement; or

(4)    Kysela's dissatisfaction with Nixon's job performance, with the requirement that Nixon be provided 30-day notice.

(JA952). No place in the contract provides broad discretion for Kysela to terminate Nixon because she refused to continue a sexual relationship with him. "[W]hen contract terms are clear and unambiguous, we must construe those terms according to their plain meaning." *Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.*, 269 Va. 315, 329 (2005) (internal citations omitted). Further, "[a] court may not 'add to the terms of the contract of parties by construction, in order to meet the [circumstances] of a particular case.'" *Id.* Besides, as a matter of law, Kysela's "dissatisfaction with Nixon's job performance" cannot be due to illegal discrimination. Otherwise, parties could simply contract out of Title VII's prohibitions. The "broad discretion" the Opposition insists Kysela had to terminate Nixon simply did not exist and this Court should not write that discretion into the contract.

## III.  THE DISTRICT COURT ERRED IN DISMISSING NIXON'S HOSTILE WORK ENVIRONMENT CLAIM BY FAILING TO GIVE PROPER CONSIDERATION TO EVIDENCE NIXON FEARED LOSING HER JOB IF SHE REFUSED KYSELA'S ADVANCES

A hostile work environment claim can be premised upon an unfulfilled threat to alter the terms or conditions of employment. *Ellerth*, 524 U.S. at 754. The threat need not be made in explicit terms, such as "you will be fired;" rather, threats of termination such as telling the employee that they will "end up gone" or that the employee would need to "become invisible" are sufficient to establish a hostile work environment. *Howerton v. Bd. of Educ. of Prince George's Cty.*, No. CIV.A. TDC-14-0242, 2015 WL 4994536, at *19 (D. Md. Aug. 19, 2015) (citing *Moron v. Va. Polytechnic Inst. & State Univ.*, 508 F. App'x 226, 230–31 (4th Cir. 2013)).

Kysela made threats, similar to those in *Howerton* and *Moron*, to Nixon regarding her employment should she not submit to his sexual advances. In November of 2018, Kysela sent Nixon an email stating "if you take care of me, I take care of you . . . that's how life works . . . you deny me and we have issues . . . ." (JA86). On September 25, 2019, when Nixon told Kysela she would only meet with him to discuss business, Kysela told her "You're the problem child. *Behave* and we will be fine." (JA1103) (emphasis added). Other threats were more overt. For example, when Kysela found out that Nixon was going to purchase her own home, which would deny him of a way to control her and coerce her for sex, Kysela threatened to fire her if she did not remain in the home that he owned. (JA11).

Based upon these threats, Nixon was in constant fear of losing her job if she refused to submit to Kysela's sexual demands, as Kysela had made it clear, both implicitly and explicitly, that she would be fired should she fail to "behave." The Second Amended Complaint alleged that "Ms. Nixon came to believe that her ability to keep her job was based on the continuation of her sexual relationship with Mr. Kysela. She was terrified if she ended the sexual relationship she would be fired, so she felt pressured to continue to have sex with Mr. Kysela, which she may not have done but for her concern of losing her job." (JA86). Accordingly, these allegations were sufficient to state a claim for hostile work environment under Title VII.

## <u>CONCLUSION</u>

This Court should reverse (1) the District Court's order granting summary judgment in favor of Appellee-Defendants Francis J. Kysela and Kysela Pere et Fils and (2) the District Court's order dismissing Appellant, Teresa Nixon's, Title VII hostile work environment claim, and remand for trial.

Respectfully submitted,

/s/ John C. Cook
Philip C. Krone
COOK CRAIG & FRANCUZENKO, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, Virginia  22030
(703) 865-7480
jcook@cookcraig.com

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with type-volume limits because, excluding the parts of
    the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure
    statement, table of contents, table of citations, statement regarding oral
    argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*5,312*] words.

    [   ] this brief uses a monospaced type and contains [*state the number of*]
    lines of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using
    [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [   ] this brief has been prepared in a monospaced typeface using [*state
    name and version of word processing program*] with [*state number of
    characters per inch and name of type style*].


Dated: <u>November 23, 2022</u>          <u>/s/ John C. Cook</u>
                                         *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 23rd day of November, 2022, I caused this Reply

Brief of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Sarah W. Conkright
> Thomas L. McCally
> CARR MALONEY, PC
> 2000 Pennsylvania Avenue, Suite 8001
> Washington, DC  20006
> (202) 310-5565
>
> *Counsel for Appellees*

> /s/ John C. Cook
> *Counsel for Appellant*